FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 24, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LISA V.,<br><br>      Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | No. 2:19-cv-00214-SMJ<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT** |

  Plaintiff Lisa V. appeals the Administrative Law Judge's (ALJ) denial of her application for Supplemental Security Income (SSI) benefits. She alleges the ALJ (1) improperly evaluated the opinions of an examining physician, and (2) erred in discounting her own subjective symptom testimony. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision. Before the Court, without oral argument, are the parties' cross-motions for summary judgment, ECF Nos. 10, 11. Upon reviewing the administrative record, the parties' briefs, and the relevant authority, the Court is fully informed. For the reasons set forth below, the Court agrees with Plaintiff that the ALJ erred in evaluating both the medical opinion evidence and Plaintiff's symptom testimony. Although these errors

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 1

invalidated the ALJ's conclusion that Plaintiff did not qualify for benefits, Plaintiff's entitlement is not clear from the face of the record. Accordingly, the Court grants Plaintiff's motion for summary judgment, denies the Commissioner's motion for summary judgment, and remands for further proceedings.

## BACKGROUND[1]

Plaintiff applied for benefits on December 19, 2016, alleging disability with an onset date of August 8, 2016. AR 165–66.[2] The Commissioner denied Plaintiff's application on January 24, 2017, *see* AR 59–66, and denied it again on reconsideration, *see* AR 68–80. At Plaintiff's request, a hearing was held before ALJ Mark Kim. AR 31–58. The ALJ denied Plaintiff benefits on September 12, 2018. AR 12–30. The Appeals Council denied Plaintiff's request for review on May 13, 2019. AR 1–6. Plaintiff then appealed to this Court under 42 U.S.C. § 405(g). ECF No. 1.

## DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

---

[1] The facts, thoroughly stated in the record and the parties' briefs, are only briefly summarized here.

[2] References to the administrative record (AR), ECF No. 7, are to the provided page numbers to avoid confusion.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 2

last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity, or RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant

is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## ALJ FINDINGS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful

activity since the alleged onset date of August 6, 2016. AR 17.

At step two, the ALJ found that Plaintiff had three medically determinable severe impairments: cerebrovascular accident, left eye trochlear nerve palsy, and antiphospholipid antibody syndrome. *Id.* The ALJ found neither Plaintiff's sleep apnea, which was aggravated by alcohol, nor her intermittent migraines were severe impairments. AR 17–18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR 18.

At step four, the ALJ found that Plaintiff had an RFC sufficient to perform a restricted range of light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] can lift and carry a maximum of 10 pounds frequently and a maximum of 20 pounds occasionally. She can sit for a total of eight hours in an eight-hour workday with normal breaks. [Plaintiff] can stand and walk for a total of six hours in an eight-hour workday with normal breaks. She can never climb ladders, ropes, or scaffolds or balance. She can occasionally climb ramps and stairs. [Plaintiff] must avoid all exposure to workplace hazards, including dangerous moving machinery and unprotected heights. She can never drive. [Plaintiff] can read print, including that on bottles, computer screens, and paperwork, for a total of one hour during an eight-hour workday with normal breaks.

AR 18–19.

In reaching this determination, the ALJ gave great weight to the opinions of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 5

Lynne Jahnke, M.D., AR 23. The ALJ gave only partial weight to the opinions of Gary Gaffield, D.O. AR 22. And the ALJ gave little weight to the opinions of state agency psychological consultants not relevant here. *Id.*

At step five, the ALJ found Plaintiff was unable to perform any past relevant work, but found she could find work as an office cleaner, small parts assembler, or house sitter, each of which existed in substantial number in the national economy. AR 24.

## STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record, considered as a whole, to support the ALJ's decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla but may be less than a preponderance. *Id.* at 1110–11 (citation omitted). If the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court will not reverse an ALJ's decision if the errors

committed by the ALJ were harmless. *Molina*, 674 F.3d at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## ANALYSIS

**A.   The ALJ erred in evaluating the medical opinion evidence**

Plaintiff first contends the ALJ erred in attributing greater weight to the opinions of non-examining medical consultant Lynne Jahnke, M.D. than examining physician Gary Gaffield, D.O. ECF No. 10 at 4–9. The Commissioner argues the ALJ's rejection of portions of Dr. Gaffield's opinions was justified. ECF No. 11 at 15–19.

For SSI appeal purposes, there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (alteration in original) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions

that are explained than to those that are not, . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (internal citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31). But the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Though the ALJ credited portions of Dr. Gaffield's medical opinions, he assigned limited weight to Dr. Gaffield's opinion that because Plaintiff had impaired balance, she should avoid all postural activities including bending, stooping, kneeling, crouching, and crawling. AR 22. The ALJ concluded this opinion was entitled to reduced weight because it was not supported by substantial evidence elsewhere in the record, and because Dr. Gaffield's "one-time physical examination of [Plaintiff] would not have provided him with a detailed, longitudinal

1   picture of the impairments sufficient to support the degree of postural limitation he

2   assessed." AR 22. In lieu of Dr. Gaffield's postural limitations, the ALJ credited the

3   testimony of Dr. Jahnke, who assessed less severe restrictions. AR 22–23. The ALJ

4   assigned Dr. Jahnke's opinions great weight because she was "familiar with the

5   requirements necessary to establish disability," because her opinion was "based

6   upon review of and consistent with the complete [medical] record," and because

7   she "clearly explained the reasons for her opinion." AR 23.

8         At the hearing, Dr. Jahnke testified that impaired balance was "common for

9   patients after a stroke," and she felt it was "probable that [Plaintiff] has ongoing

10  impaired balance," but noted that Dr. Gaffield's findings were the only ones that

11  discussed a concern with Plaintiff's balance. AR 38–39. In opining as to Plaintiff's

12  RFC, Dr. Jahnke said "I will sort of include the balance issue," though she again

13  noted only Dr. Gaffield's examination mentioned balance. AR 39. The

14  Commissioner appears to contend that Dr. Gaffield's opinions were contradicted by

15  these statements from Dr. Jahnke, and thus that the ALJ needed only provide

16  "specific and legitimate reasons that are supported by substantial evidence" to reject

17  them. *Bayliss*, 427 F.3d at 1216.

18        But Dr. Jahnke nowhere disagreed with Dr. Gaffield's assessment of

19  Plaintiff's balance, nor did she express any concern with the basis for his opinions;

20  rather she simply noted that they were uncorroborated. The ALJ did not find that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY
JUDGMENT – 9

Dr. Gaffield's opinions were "brief, conclusory [or] inadequately supported by clinical findings," and the record would not, in any event, support that conclusion. *Bray*, 554 F.3d at 1228; *see also* AR 458–63 (Dr. Gaffield's report). Accordingly, as to the issue of Plaintiff's balance, the ALJ could only reject Dr. Gaffield's opinion by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216.

Having reviewed the record, the Court finds the ALJ failed to do so. As noted above, it does not appear that Dr. Gaffield's opinion concerning Plaintiff's balance was contradicted in the objective medical record or at the hearing. AR 22. Rather, the ALJ simply found his opinion was uncorroborated. *Id.* But that is not an independently sufficient basis to reject a physician's opinion. *See Bullock v. Apfel*, No. C-98-4702-VRW, 2000 WL 52321, at *4 (N.D. Cal. Jan. 13, 2000) (citing *Day v. Weinberger*, 522 F.2d 1154, 1156–57 (9th Cir. 1975)). Dr. Gaffield's opinion that Plaintiff's balance was impaired was neither brief nor conclusory and was based on his own clinical evaluation of Plaintiff. Moreover, that opinion was in fact buttressed by Dr. Jahnke, who testified that impaired balance was common for stroke victims. AR 38–39. Particularly where no other doctor attempted to evaluate Plaintiff's balance, the mere fact that Dr. Gaffield's findings were uncorroborated was not a clear and convincing reason to reject Dr. Gaffield's opinions.

The ALJ also concluded that Dr. Gaffield's "one-time physical examination

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 10

of [Plaintiff] would not have provided him with a detailed, longitudinal picture of the impairments sufficient to support the degree of postural limitation he assessed." AR 22. That a physician's opinion is premised on a single clinical examination could constitute a valid basis to assign it reduced weight if, for example, it ran contrary to the opinions of a claimant's longtime treating physician. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). But the fact that Dr. Gaffield only performed one examination is not, absent such disagreement with the findings of other physicians, a sufficient basis to reject his conclusions. *See Ford v. Berryhill*, No. C17-1343JLR, 2018 WL 2002806, at *2 (W.D. Wash. Apr. 30, 2018) ("If the court were to reject medical opinions every time they were based on a single examination, then only opinions from treating doctors would be considered, contrary to federal regulation.").

What is more, the ALJ rejected the opinion of an examining physician who evaluated Plaintiff once in favor of a non-examining physician who never evaluated Plaintiff at all. The ALJ's proffered reasons for doing so—that Dr. Jahnke was familiar with the standard for assessing disability, that she had reviewed the medical record, and that she clearly explained her opinions—did not justify inverting the long-settled hierarchy of physician opinions set out both in the Commissioner's regulations and in this circuit's precedents. *See* 20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631 (9th Cir. 2007) ("Generally, the opinions of examining physicians are

afforded more weight than those of non-examining physicians.").

In view of the above, the Court agrees with Plaintiff that the ALJ failed to articulate a clear and convincing reason to assign reduced weight to Dr. Gaffield's opinions. On remand, the ALJ shall reevaluate those opinions in a manner consistent with the Court's ruling and again assess Plaintiff's claims of disability.

**B.    The ALJ erred in discounting Plaintiff's subjective symptom testimony**

Plaintiff also contends the ALJ erred in discounting Plaintiff's own subjective symptom testimony. ECF No. 10 at 9–14. Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of her symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). The ALJ's findings must be sufficient "to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In evaluating the claimant's credibility, the "ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Bray*, 554 F.3d at 1227. The Court may not second guess the ALJ's credibility findings that are supported by substantial evidence. *Tommasetti*, 533 F.3d at 1039.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 12

The ALJ rejected Plaintiff's symptom testimony for several reasons. First, the ALJ found the medical record contained no evidence that Plaintiff "sought or required significant forms of treatment"—which the ALJ defined to include hospitalization, emergency room treatment, or "significant office care"—after her August 2016 stroke. AR 20. The ALJ concluded that Plaintiff's "treatment efforts and requirements are inconsistent with the presence of debilitating impairments" and appears to have assigned this "limited treatment history" significant weight. *Id.* ("Noteworthy in this case is claimant's limited treatment history."). The Commissioner argues this conservative approach to seeking treatment justified the ALJ's rejection of Plaintiff's symptom testimony. ECF No. 11 at 7–9.

The "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is one factor the ALJ may consider in evaluating a claimant's testimony. *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). But as Plaintiff argues—and the record establishes—insofar as the ALJ found Plaintiff did not seek any treatment after her stroke, this conclusion simply ignores a substantial portion of the record. *See* AR 20 ("[I]t is noted the only treatment [Plaintiff] received after December 2016 was from Karl Holling, her treating ophthalmologist.").

Plaintiff points to visits with Leslie Walters, M.D., her treating physician, in September, October, and December of 2016, as well as a visit in May 2017. *Id.* at 10

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 13

(citing AR 326, 329, 335 & 336). During these visits Plaintiff complained of double vision and weakness in her left side, eye pain, severe headaches, and troubles with her vision. *Id.* Dr. Walters also reviewed Plaintiff's medications including migraine medication and anti-coagulants. *Id.* (citing AR 327, 335–36).

Plaintiff was also seen by Peter J. Schlegel, M.D., an oncologist to whom she was referred by Dr. Walters, on October 31, 2016, and again on November 17, 2016. AR 409–38. Dr. Schlegel opined that Plaintiff likely suffered from antiphospholipid antibody syndrome and wrote that long-term treatment with anticoagulants would likely be necessary given Plaintiff's history with stroke. AR 409. Finally, Plaintiff was seen by Darren C. Hollenbaugh, M.D., a cardiologist to whom she was referred by Dr. Walters, on November 8, 2016. AR 330–34. Dr. Hollenbaugh evaluated the treatment plan proposed by Dr. Schlegel and examined Plaintiff for possible side effects from her medications. *See* AR 330–31 ("[Dr. Schlegel] will likely be starting her on Coumadin [next] week, which I agree with completely."). Without explanation, the ALJ either ignored these treatment records or concluded they did not rise to the level of "significant office care" and were therefore not worth mentioning.[3] AR 20. The Commissioner followed suit, inexplicably declining to so

---

[3] Furthermore, although the ALJ was correct in observing that Plaintiff did not require hospitalization, treatment in the emergency room, or significant office care in the time after her stroke, the ALJ failed to explain how this detracted from the credibility of Plaintiff's symptom testimony.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 14

much as engage with Plaintiff's argument that the ALJ erred by ignoring this evidence. *See* ECF No. 11 at 7–9. This was not a "specific, clear and convincing reason" to discount Plaintiff's symptom testimony. *Burrell*, 775 F.3d at 1137.

Second, the ALJ discounted Plaintiff's testimony concerning her double vision because it was inconsistent with Dr. Holling's opinion that the impairment could be treated with prism glasses when she was tired. AR 20 (citing AR 467). The ALJ observed that Plaintiff had never sought a prescription for prism glasses, and in the ALJ's view, if Plaintiff "were actually having . . . continued problems with double vision, it would seem that she would have seen Dr. Holling for follow up regarding the use of prism glasses." AR 20. As above, an ALJ may consider the "unexplained or inadequately explained failure to seek treatment" in evaluating a claimant's testimony. *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen*, 80 F.3d at 1284). Thus, Plaintiff's failure to seek a prescription for prism glasses was a specific, clear, and convincing reason to discount Plaintiff's testimony concerning double vision when she was tired. *See* AR 467 (reporting Plaintiff only noticed double vision when tired). It is not clear from the record, however, how this conclusion affected the ALJ's ultimate conclusion. On remand, therefore, the ALJ is directed to evaluate and weigh this testimony in light of the record as a whole.

Finally, the ALJ discounted Plaintiff's symptom testimony because he found it inconsistent with Plaintiff's self-reported activities of daily living. AR 20–21.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 15

1  Specifically, the ALJ noted Plaintiff reported she was able to maintain personal
2  hygiene, "admitted she did some 'light' household chores and yard work," went for
3  daily walks by the river using a cane or walking stick, was able to prepare dinner
4  and maintain "occasional social contact with family or friends," and was capable of
5  shopping online "with some assistance." AR 20 (citing AR 197–200, 459).

6  But the Court's review of the record leads it to conclude the ALJ's description
7  of Plaintiff's activities of daily living may have been incomplete. For example,
8  during one of the same visits the ALJ discussed, Plaintiff reported she struggled to
9  work on a computer because she "just does not remember what to do any longer
10 and fails at all of her attempts to navigate systems." AR 459. And though Plaintiff
11 did indeed report engaging in light household chores and yard work, she reported
12 that when doing so she is "clumsy . . . and falls frequently." *Id.* Similarly, while
13 Plaintiff self-reported that she could do most household chores, she wrote she could
14 not clean the floors because she "cannot look down for long periods," wrote she
15 needed substantial assistance to go shopping, and found managing money difficult
16 because it was hard to write and she struggled to see the numbers. AR 197–200.

17 The Court is prohibited from second-guessing the ALJ's credibility
18 determinations. However, his selective citations to those portions of the record
19 consistent with his ultimate conclusion, without explaining his decision to ignore
20 those portions of the record that were inconsistent with that conclusion, are

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY
JUDGMENT – 16

insufficient "to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti*, 533 F.3d at 1039. Moreover, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). From the ALJ's decision, it is unclear whether he would have been satisfied with anything less. On remand, the ALJ shall reconsider whether Plaintiff's activities of daily living were in fact inconsistent with her symptom testimony. *Burrell*, 775 F.3d at 1137.

Though the ALJ explained that he considered Plaintiff's symptom testimony less than fully credible for the reasons set out above, he did not explain which specific portions of her testimony were undermined. *See generally* AR 20–23. The Commissioner argues these general credibility findings are sufficient to permit the Court to find the ALJ did not arbitrarily discredit Plaintiff's testimony. ECF No. 11 at 13–14 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)). Having reviewed the record and the ALJ's decision, the Court disagrees. The ALJ's apparent disregard for portions of the record inconsistent with—or, in the case of Plaintiff's post-stroke treatment, flatly contradictory to—his decision prevents the Court from finding the ALJ fairly evaluated the credibility of Plaintiff's symptom testimony. Those errors likewise prevent the Court from "infer[ring]" the reasoning underlying the ALJ's credibility analysis, as the Commissioner urges. ECF No. 11 at 14. In sum, the ALJ erred in

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 17

evaluating Plaintiff's subjective symptom testimony, and further proceedings are necessary to ensure Plaintiff's application is evaluated fairly.

C. **Remand, rather than an award of benefits, is appropriate**

Though there is certainly substantial evidence to support Plaintiff's entitlement to benefits, that conclusion is not "clear from the record." *Garrison*, 759 F.3d at 1019. Accordingly, the Court remands this matter to the ALJ for further proceedings consistent with this Order, rather than simply awarding benefits.

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

3. The Clerk's Office shall **ENTER JUDGMENT** in favor of **PLAINTIFF** and thereafter **CLOSE** the file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 24th day of April 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 18